1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45

THE HONORABLE MARSHA J. PECHMAN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| VIRGINIA MASON MEDICAL CENTER, a Washington nonprofit corporation,<br><br>Plaintiff,<br><br>v.<br><br>EXECUTIVE RISK INDEMNITY INC., a Delaware stock insurance company,<br><br>Defendant. | NO.   C07-0636 MJP<br><br>PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT RE:  DEFENDANT'S DUTY TO INDEMNIFY<br><br>NOTED ON MOTION CALENDAR:<br>Friday, August 24, 2007 |

PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY
JUDGMENT RE:  DEFENDANT'S DUTY TO INDEMNIFY
No. C07-0636 MJP

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

# TABLE OF CONTENTS

I.  INTRODUCTION AND SUMMARY OF ARGUMENT ......................................1

II. STATEMENT OF FACTS .....................................................................................1

  A.  The D&O Policy Purchased by Virginia Mason Covers "Loss" Due to "Monetary Damages or Settlements." ...........................................................2

  B.  The Facility Charges at Issue in the Underlying Litigation are Legal, Standard-Industry Charges Approved by the Federal Government and Health Plans. ...............................................................................................3

  C.  The Gibson Class Sought Compensatory Damages Resulting From Patients' Obligation to Pay a Portion of Virginia Mason's Facility Charges—Not Restitution or Disgorgement. ................................................5

    1.  The Gibson Litigation Complaint Sought Actual "Compensatory Damages." ...............................................................5

    2.  The Motion for Class Certification and Class Notice Proceedings Confirm That Plaintiffs Sought Compensatory Damages, Not Restitution. ................................................................6

    3.  The Gibson Parties' Agreement on the Scope of the Class Mailing List Again Confirmed That Plaintiffs Sought Compensatory Damages, Not Restitution. .......................................7

    4.  The Summary Dismissal of Named Plaintiff Lori Mill's Claim Based on Her Failure to Contribute Any Amount Toward the Facility Charge Confirms That Plaintiffs Sought Compensatory Damages, Not Restitution. ................................................................8

    5.  Plaintiffs Conceded that Virginia Mason Lawfully Imposed Facility Charges, and Virginia Mason Successfully Obtained a Summary Judgment Dismissal of the Differential Pricing Claim. ...............................................................................................9

    6.  The Accepted Offer of Judgment to Pay as "Damages" Only Those Amounts Class Members Contributed to Facility Charge Confirms—Yet Again—That Plaintiffs Sought Compensatory Damages, Not Restitution. ............................................................10

PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY
JUDGMENT RE:  DEFENDANT'S DUTY TO INDEMNIFY - i
No. C07-0636 MJP

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

7.      The Gibson Final Judgment and Order to Pay "Damages" Shows That Plaintiffs Obtained Compensatory Damages, Not Restitution. ....................................................................................10

D.      Executive Risk Does Not Dispute Virginia Mason Paid "Monetary Damages"; It Rejects Coverage Relying on an Implied, Public-Policy Based Exclusion. ........................................................................11

III.    ARGUMENT AND AUTHORITIES .....................................................................12

A.      Executive Risk Bears the Burden of Proving the Applicability of an Exclusion ...................................................................................12

B.      Executive Risk's Reliance on an Implied Disgorgement Exclusion Lacks Merit As a Matter of Law Because the Gibson Plaintiffs Undisputedly Sought and Virginia Mason Paid "Compensatory Damages" Under the WCPA Measured by the "Actual Damages" or "Loss" to Plaintiffs—Not Restitution or Disgorgement of Profits Measured by the "Gain" to Virginia Mason. ...........................................13

1.      Executive Risk's Argument Rests Solely on a Misapplication of Level 3 Communications, Inc. v. Federal Ins. Co., 272 F.3d 908 (7th Cir. 2001) ......................................................................13

        a.      The Ninth Circuit Has Clarified That Applying Level 3 Requires Looking to the Allegations in the Underlying Litigation and the Litigants' Understanding of the Damages Theories Asserted. ...............................................14

        b.      The Gibson Plaintiffs Undisputedly Sought and Received "Compensatory Damages," Not Restitution or Disgorgement and Therefore the Level 3 Exclusion is Inapposite as a Matter of Law. ...........................................15

        c.      Had the Gibson Plaintiffs Sought Restitution or Disgorgement of Profits, Summary Judgment Dismissing Named Plaintiff Mill's Claim for Her Inability to Prove Harm Would Not Have Been Warranted. ..........................................................................17

2.      The Level 3 Rule—an Implied Public Policy Exclusion Against Insuring for "Theft"—Would Not Apply to Preclude a Washington Policyholder's Coverage for WCPA Loss in Any Event. ...........................................................................17

PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT RE: DEFENDANT'S DUTY TO INDEMNIFY - ii
No. C07-0636 MJP

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

a.      The Public Policy Basis for <u>Level 3</u> Has Not Been
         Articulated in Washington and is Inconsistent with the
         Elements of the WCPA. ........................................................18

b.      Applying <u>Level 3</u>'s Public Policy Exclusion to Preclude
         Coverage for WCPA Damages Would Conflict With
         Washington's Principles of Insurance Policy
         Interpretation. ....................................................................19

IV.   CONCLUSION..............................................................................................21

PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY
JUDGMENT RE:  DEFENDANT'S DUTY TO INDEMNIFY -
iii
No. C07-0636 MJP

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

1
2

# TABLE OF AUTHORITIES

3
4

**Cases**

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45

Aluminum Co. of Am. v. Aetna Cas. & Sur. Co., 140 Wn.2d 517, 998 P.2d 856 ....................... 20

American Star Ins. Co. v. Grice, 121 Wn.2d 869, 854 P.2d 622 (1993) ...................................... 12

Boeing Co. v. Aetna Cas. & Sur. Co., 113 Wn.2d 869, 784 P.2d 507 (1990)........................ 20, 21

Bowers v. Transamerica Title Ins. Co., 100 Wn.2d 581, 675 P.2d 193 (1983)........................... 19

City of Seattle v. Blume, 134 Wn.2d 243, 947 P.2d 223 (1997) .................................................. 20

Dairyland Ins. Co. v. Ward, 83 Wn.2d 353, 517 P.2d 966 (1974) .............................................. 21

Diamanco, Inc. v. Aetna Cas. & Sur. Co., 97 Wn. App. 335, 983 P.2d 707 (2000)..................... 12

Dwyer v. J.I. Kislak Mortg. Corp., 103 Wn. App. 542, 13 P.3d 240 (2000)................................ 18

Level 3 Communications, Inc. v. Federal Ins. Co., 272 F.3d 908 (7th Cir. 2001) ................ Passim

Federal Ins. Co. v. Continental Cas. Co., No. 2:05-cv-305, 2006 U.S. Dist. LEXIS 85323
    (W.D. Pa. Nov. 22, 2006) ....................................................................................................... 20

Fluke Corp. v. The Hartford Acc. & Indem. Co., 145 Wn.2d 137, 34 P.3d 809 (2001) .............. 19

George v. Farmers Ins. Co. of Wash., 106 Wn. App. 430, 23 P.3d 552 (2001) ........................... 20

Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 719
    P.2d 531 (1986)................................................................................................................. 18, 19

Pan-Pacific Retail Properties, Inc. v. Gulf Ins. Co., 471 F.3d 961 (9th Cir. 2006) ............... Passim

Seafirst Center Ltd. P'ship v. Erickson, 127 Wn.2d 355, 898 P.2d 299 (1995)............................ 20

Seattle Prof'l Eng'g Emps. Ass'n v. Boeing Co., 139 Wn.2d 824, 991 P.2d 1126 (2000)............ 16

State Farm Mut. Auto. Ins. Co. v. Ruiz, 134 Wn.2d 713, 952 P.2d 157 (1998)........................... 21

Unified Western Grocers, Inc. v. Twin City Ins. Co., 457 F.3d 1106 (9th Cir. 2006) .......... Passim

**Statutes & Administrative Codes**

RCW § 19.86 ..................................................................................................................................... 1

**Other**

James M. Fischer, <u>Understanding Remedies</u> § 50 (1999) ............................................................16

Thomas V. Harris, <u>Washington Insurance Law</u> § 6.10 (2d ed. 2006) ...........................................12

PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY
JUDGMENT RE: DEFENDANT'S DUTY TO INDEMNIFY - v
No. C07-0636 MJP

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

## I.     INTRODUCTION AND SUMMARY OF ARGUMENT

Virginia Mason is insured under a directors and officers liability policy ("D&O Policy") issued by defendant Executive Risk Indemnity Inc.  When Virginia Mason settled, via an Offer of Judgment, a class action challenging a lawful and routine billing practice used by Virginia Mason, it called upon Executive Risk to live up to its indemnity obligations under the D&O Policy.  Although Virginia Mason's loss is covered, Executive Risk refused to fulfill its contractual obligations.

Executive Risk has not denied coverage based on language found anywhere in the D&O Policy.  Instead, Executive Risk reads into the policy a so-called "public policy" exclusion that would preclude coverage for damages paid by an insured as a result of a claim for restitution or disgorgement.  Executive Risk's position ignores that the "exclusion" upon which it relies has never been applied in Washington, and Washington courts refuse to apply public-policy-based exclusions to oust policyholders from coverage.  Moreover, as a matter of undisputed fact, the claims of the plaintiffs in the underlying litigation sought "compensatory damages" under the Washington Consumer Protection Act, not disgorgement or any other restitutionary form of relief.  The complaint, the final judgment, and numerous other pleadings, declarations, and correspondence describing plaintiffs' damages theory, establish this point beyond any doubt.

## II.     STATEMENT OF FACTS

The D&O Policy Virginia Mason purchased expressly covers "monetary damages." Declaration of Lynne Chafetz in Supp. of Pl.'s Cross-Mots. for Partial Summ. J., Ex. A at End. 23, ¶ (2) ("Loss" definition). The damages Virginia Mason paid in the underlying litigation stem from class members' (Virginia Mason's patients') challenge under Washington's Consumer Protection Act ("WCPA"), RCW 19.86 et. seq., to Virginia Mason's practices regarding

PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY
JUDGMENT RE: DEFENDANT'S DUTY TO INDEMNIFY - 1
No. C07-0636 MJP

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

disclosure of a lawful hospital charge.  Under the terms of a judgment consented to by Virginia

Mason as part of the settlement of that litigation, Virginia Mason agreed to pay damages only for

the portion of the hospital charge that class members could have avoided had they known about

the charge and gone elsewhere within the Virginia Mason system to seek care.  The complaint,

motions practice, and settlement of the underlying litigation all demonstrate that the amounts

Virginia Mason ultimately agreed to pay are "monetary damages" under the WCPA—not

amounts paid as restitution or disgorgement of profits.

## A.      The D&O Policy Purchased by Virginia Mason Covers "Loss" Due to "Monetary Damages or Settlements."

Executive Risk sold to Virginia Mason the Directors, Officers and Trustees Liability

Insurance Including Healthcare Organization Reimbursement Policy bearing policy number

8168-9429, with a policy period of February 1, 2004 through February 1, 2005.  A copy of the

D&O Policy is attached as Exhibit A to the Declaration of Lynne Chafetz.

Insuring Agreement C of the policy provides, in relevant part:

[T]he Underwriter will pay on behalf of the Insured Entity Loss from Claims first made against it during the Policy Period.

Chafetz Decl., Ex. A at 1, ¶ I.(C) (emphasis added).  "Loss," in turn, means:

any monetary damages or settlements which an Insured is obligated to pay as a result of any Claim, including but not limited to punitive or exemplary damages incurred in any civil proceeding in an amount not exceeding the sum of one hundred [percent] (100%) of the Limit of Liability, where insurable under applicable law.

Id. at End. No. 23, ¶ (2) (emphasis added).  But for Executive Risk's attempt to read in the

implied exclusion, as discussed below, the parties do not dispute that the damages paid by

PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY
JUDGMENT RE:  DEFENDANT'S DUTY TO INDEMNIFY - 2
No. C07-0636 MJP

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

Virginia Mason are "Loss" within the meaning of the policy.[1]  See also Declaration of Christie

Snyder in Supp. of Pl.'s Cross-Mots. for Partial Summ. J., Exs. A-D.

**B.      The Facility Charges at Issue in the Underlying Litigation are Legal, Standard-Industry Charges Approved by the Federal Government and Health Plans.**

On January 12, 2005, the underlying plaintiffs filed a putative class action suit in King

County Superior Court against Virginia Mason, entitled Gibson v. Virginia Mason Medical

Center, No. 05-02198 ("Gibson Litigation").  The case was assigned to the Honorable Gregory P.

Canova.  Declaration of Charles Wright in Supp. of Pl.'s Cross-Mots. for Partial Summ. J., Ex.

A.  The Gibson Litigation challenged Virginia Mason's hospital "facility charges," which are

charges it collects for certain of its outpatient services at its hospital-based, outpatient clinic in

downtown Seattle.  Id.; see also id., Ex. B ¶¶ 6, 17-18, 21 (explaining facility charges).  Facility

charges are standard practice in the health care industry and are approved by the federal

government.  Id., Ex. B ¶ 7.  Indeed, Virginia Mason applied for and received express approval

from the federal government to use "provider-based" or "hospital-based" billing, which creates

facility charges.  Id. ¶¶ 8-16.  Hospitals throughout Washington and the United States use

hospital-based billing, including Swedish Medical Center, the University of Washington Medical

Center in Seattle, and MultiCare Health System in Tacoma.  Id., Ex. C ¶ 5.

Virginia Mason does not charge, nor is it permitted to charge, hospital facility charges at

its many neighborhood clinics throughout the Puget Sound region.  Id., Ex. B ¶ 8.  Those clinics

---

[1] In Executive Risk's original reservation-of-rights letter, the insurer cited Exclusion III.A of the D&O Policy.  Chafetz Decl., Ex. D at 4.  In its most recent pre-coverage-litigation correspondence, Executive Risk disavowed any reliance on that exclusion (Snyder Decl., Ex. D at 2), and appropriately so:  the exclusion would have required a finding of fact that Virginia Mason was not "legally entitled" to impose the hospital facility charge, whereas no such finding was entered and even the underlying Gibson plaintiffs conceded the charge itself was lawful and that Virginia Mason was permitted to impose it.  See also Part II.C.5, infra.

have not been approved as "hospital-based" as have Virginia Mason's clinics on its main hospital campus. Id. ¶¶ 8-16. As the federal government recognized when it approved them, facility charges allow Virginia Mason and other hospitals to gain revenue from their outpatient services to help pay the costs of operating a full-service hospital. Id. ¶¶ 33-34.

Health plans—like the insurer of the named plaintiffs in the Gibson Litigation—have full knowledge of "hospital-based" billing and facility charges, agree to pay those charges, and do pay those charges. Id. ¶¶ 6, 21; see also id., Ex. C ¶¶ 3-6. Every healthcare insurer with whom Virginia Mason contracts has paid facility charges without objection since Virginia Mason first started charging them to its insured patients. Id., Ex. B ¶ 21. The federal and state governments also pay these charges. Id. ¶¶ 19-20.

Neither healthcare insurers nor their beneficiaries pay the full amount of Virginia Mason's facility charges. As with other charges, health plans negotiate discounts from facility charges. The amounts the insurer and its beneficiary agree to pay between them are called "allowable amounts." Id. ¶¶ 22-23. The allowable amounts then are set forth in a "Hospital Fee Schedule" that remains an exhibit to the health insurer's contract with Virginia Mason. Id. ¶ 24. The patient pays only a portion of the allowable amount, depending on the terms of the patient's health plan. Id. ¶ 31. Thus, even at Virginia Mason's downtown clinic where facility charges were imposed, some patients did not pay any portion of the charge because their health plan covered it in full, while other patients paid only a portion of the charge. Id. ¶¶ 21, 25. See also id., Ex. D at 2-19 (extensive discussion of facility charges, permission to impose the charges, patients' and insurers' respective responsibilities to pay the charges); id., Ex. E ¶¶ 3-7.

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

**C.** **The Gibson Class Sought Compensatory Damages Resulting From Patients' Obligation to Pay a Portion of Virginia Mason's Facility Charges—Not Restitution or Disgorgement.**

From the complaint through final judgment, the proceedings in the Gibson Litigation

demonstrate that the plaintiffs sought actual compensatory damages resulting from their

obligation to pay a portion of the facility charges.  Through the course of over two years of

active litigation, plaintiffs never sought restitution or disgorgement.

**1.** **The Gibson Litigation Complaint Sought Actual "Compensatory Damages."**

The complaint in the Gibson Litigation alleged two claims for relief under the WCPA.

Wright Decl., Ex. A. The first claim for "Unfair or Deceptive Nondisclosure" alleged Virginia

Mason violated the WCPA by failing to disclose to patients that it charges more for the same

care at its hospital-based outpatient clinic than it does at its other clinics (the "Nondisclosure

Claim"). Id. ¶ 53. The second claim for "Unfair or Deceptive Pricing" directly attacked the

facility charges; plaintiffs claimed the existence of different charges between the hospital-based

and neighborhood clinics was a WCPA violation in and of itself, apart from issues of disclosure

(the "Differential Pricing Claim"). Id. ¶ 60. The Differential Pricing Claim was dismissed after

plaintiffs conceded the charges were in fact lawful. See Part II.C.5, infra.

Apart from treble damages and attorneys' fees and costs, plaintiffs' Complaint makes

clear that the only monetary relief sought under both WCPA claims was "compensatory

damages" caused by Virginia Mason using hospital-based billing at some clinics but not at

others. Wright Decl., Ex. A ¶¶ 57, 63, VIII(4)-(5). Plaintiffs alleged:

> "Under the [WCPA], plaintiffs and the Class are entitled to compensatory
> damages for the injury to their business or property caused by this unfair or
> deceptive act or practice, along with treble damages up to $10,000 per class
> member, and attorney's fees and costs.

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

Id. ¶¶ 57, 63 (emphasis added).  Further, when demanding relief, plaintiffs requested that a

judgment be entered on both WCPA claims:

> in an amount to be proven at trial, for compensatory damages caused by Virginia
> Mason's unfair or deceptive practice . . . along with treble damages up to $10,000
> to each class member . . . .

Id. ¶¶ VIII(4)-(5) (emphasis added).  At no point in the Complaint did the plaintiffs claim or

otherwise seek disgorgement of profits, restitution, or any other form of remedy that would be

predicated on amounts allegedly retained wrongfully by Virginia Mason.

### 2. The Motion for Class Certification and Class Notice Proceedings Confirm That Plaintiffs Sought Compensatory Damages, Not Restitution.

On June 9, 2005, the Gibson plaintiffs filed a motion for class certification.  They argued

calculation of damages was an "administrative task" based on "the amount of damages suffered

by each" class member.  Wright Decl., Ex. F at 12.  They did not argue the damages would be

calculated based on the total amounts received by Virginia Mason on account of the facility

charges.  Id.  In its opposition, Virginia Mason addressed the proof each class member must

provide to establish injury on the Nondisclosure Claim, including that the class member: (a) did

not know about the facility charge; (b) would have gone to a neighborhood clinic had they

known about the charge; and (c) incurred a material share of the charge.  Id., Ex. G at 25-31.

Plaintiffs disputed the degree of proof, but never argued they could dispense with proof of injury

altogether and force Virginia Mason to disgorge the payments it received from the charges.

The court granted plaintiffs' motion on September 9, 2005.  Id., Ex. H.  Significantly, the

class did not include any patient whose facility charge was covered entirely by a health plan.

Instead, Judge Canova defined the class narrowly as only those patients "who were obligated to

pay all or any portion of" the charge.  Id. at 3.

PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY
JUDGMENT RE: DEFENDANT'S DUTY TO INDEMNIFY - 6
No. C07-0636 MJP

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

Judge Canova also granted plaintiffs' motion to approve their proposed form of class notice. Id., Ex. I. Rather than a notice indicating all class members would receive a return of the entire facility charge should they remain in the class, the notice informed class members they would have to submit information to a claims administrator so that "individual monetary damages" could be established:

> If you choose to remain a member of the class and plaintiffs obtain a class-wide judgment against Virginia Mason establishing its liability, you may be required to submit information to a claims administrator describing the medical services you obtained from Virginia Mason in order to establish any individual monetary damages to which you may be entitled.

Id. at 4 (attached class notice) (emphasis added). Plaintiffs had expressly agreed to this requirement. Id., Ex. J at 5. The approved notice also required class members to submit a privacy waiver to receive damages. Id., Ex. I at 4 (attached class notice). As Virginia Mason had argued, a waiver was necessary because proof of damages would put class members' confidential medical records at issue. Id., Ex. K at 7.

The effect of both provisions in the class notice was to limit recovery to those class members who took the affirmative steps of proving damages based on their confidential records. The ruling effectively precluded recovery based on the amounts received by Virginia Mason.

### 3.   The Gibson Parties' Agreement on the Scope of the Class Mailing List Again Confirmed That Plaintiffs Sought Compensatory Damages, Not Restitution.

The fact the Gibson plaintiffs sought compensatory damages, not restitution, also is evidenced by the parties' discussions regarding the persons who should receive notice of the certified class action. Counsel for Virginia Mason sent a letter to plaintiffs' counsel to confirm, among other things, that the list would exclude persons who had not been obligated to pay any portion of the facility charge. Wright Decl., Ex. L at 2-3. The letter made clear that:

PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT RE: DEFENDANT'S DUTY TO INDEMNIFY - 7
No. C07-0636 MJP

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

[a] large number of patients had insurance coverage that paid for the entire amount of the facility charge. These patients were therefore never obligated to pay any portion of the charge differential. Any patient who paid no amount on a claim, whose claim is closed and whose accounts never showed a patient balance for the facility charge will be excluded from the mailing list.

Id. Subsequent email correspondence confirmed that plaintiffs' counsel agreed with the exclusions. Id., Ex. M at 3. Virginia Mason received payment for the facility charges assessed to these patients, but the class never once sought disgorgement of those payments.

### 4. The Summary Dismissal of Named Plaintiff Lori Mill's Claim Based on Her Failure to Contribute Any Amount Toward the Facility Charge Confirms That Plaintiffs Sought Compensatory Damages, Not Restitution.

Virginia Mason moved for summary judgment on the claims asserted by named plaintiff Lori Mill. Wright Decl., Ex. N. The motion focused on Ms. Mill's lack of injury: Ms. Mill had not paid any portion of the facility charge that formed the basis of her claim and, as the WCPA requires proof of compensable injury, summary judgment was appropriate. Id. at 7. As Virginia Mason noted, the WCPA focuses on losses suffered by the plaintiff and "reaches only those situations where a consumer's property interest or money have been 'diminished.'" Id.

Plaintiffs did not contest this standard but instead argued that Ms. Mill had suffered other forms of damage. Id., Ex. O at 7-8. Plaintiffs acknowledged that Ms. Mill did not actually lose money as a result of being assessed a facility charge. Id. Were plaintiffs seeking restitutionary or disgorgement remedies, their brief opposing a motion for summary judgment for lack of proof of injury would have been an obvious place to assert that claim. But plaintiffs did not do so. Id. Ultimately, Judge Canova granted Virginia Mason's motion. Id., Ex. P. Specifically, he concluded that "[b]ecause Ms. Mill has not suffered any injury to business or property, her claims are DISMISSED with prejudice." Id. at 2.

**5.    Plaintiffs Conceded that Virginia Mason Lawfully Imposed Facility Charges, and Virginia Mason Successfully Obtained a Summary Judgment Dismissal of the Differential Pricing Claim.**

Virginia Mason then moved to dismiss the two CPA claims.  Wright Decl., Ex. Q.

Among other things, Virginia Mason presented substantial evidence that:  (a) the practice of

billing a facility charge when care is provided in a hospital-based clinic is standard-industry

practice and specifically approved by Medicare and other governmental agencies; (b) health care

insurers (including the insurer for the named plaintiff) also know and approve of the practice and

pay for the covered portion of the charge; and (c) ultimately, there is nothing illegal or unlawful

about imposing a facility charge itself.  Id.

In her opposition, the plaintiff expressly abandoned the Differential Pricing Claim,

conceding that there is nothing unlawful about imposing facility charges per se:

> Plaintiff does not challenge Virginia Mason's right to charge a facility fee at its
> downtown clinics or its right to charge . . . price differentials between its
> downtown and satellite clinics.

Id., Ex. R at 1.  According to the plaintiff, the "case is now exclusively a deceptive non-

disclosure case concerning Virginia Mason's failure to disclose" facility charges.  Id. at 3.

The court granted Virginia Mason's summary judgment motion as to the Differential

Pricing Claim but denied the motion as to the Nondisclosure Claim.  Id., Ex. S.  The court, in

effect, ruled that facility charges are legal even if they create a price differential.  Id.  In

dismissing the Differential Pricing Claim, the court and parties thus, once again, focused the case

on any compensable injury caused by alleged nondisclosure, not the lawfulness of Virginia

Mason's practice in imposing the facility charge itself.

PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY
JUDGMENT RE: DEFENDANT'S DUTY TO INDEMNIFY - 9
No. C07-0636 MJP

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45

6.    **The Accepted Offer of Judgment to Pay as "Damages" Only Those Amounts Class Members Contributed to Facility Charge Confirms—Yet Again—That Plaintiffs Sought Compensatory Damages, Not Restitution.**

With Executive Risk's approval, Virginia Mason sent an offer of judgment to class

counsel on October 24, 2006. Wright Decl., Exs. T-U. In sum, Virginia Mason offered: (a) to

pay as damages the amount of each patient's portion of the facility charge for each claimant who

submitted a claim by October 24, 2006; (b) to pay the class counsel's attorneys' fees and costs

through October 24, 2006 in an amount to be determined by Judge Canova; and (c) to assist

patients in determining their personal financial responsibility for medical services and to clarify

the facility charges and pricing for services. Id., Ex. U. Consistent with plaintiffs' allegations

and damages theories asserted, as well as the court's rulings in the case, the offer did not provide

for restitution or disgorgement of profits on account of the facility charges received by Virginia

Mason, nor did it require Virginia Mason to stop charging facility charges or to eliminate the

charge differentials within Virginia Mason's system. Id. Rather, the offer, if accepted, would

compensate the plaintiffs for their individual contribution to the facility charge. Id. Plaintiffs

accepted the offer of judgment on November 2, 2006. Id., Ex V.

7.    **The Gibson Final Judgment and Order to Pay "Damages" Shows That Plaintiffs Obtained Compensatory Damages, Not Restitution.**

After accepting the offer of judgment, the Gibson plaintiffs sought entry of a final

judgment. Wright Decl., Ex. W. Plaintiffs' motion reiterated that the accepted offer provided a

damages recovery to the class in the form of a payment only "of that portion of any facility fee

paid." Id. at 4. The motion did not seek the entirety of facility charges imposed by Virginia

Mason or the profits realized on account of the facility charges. Id. In other words, the motion

did not seek restitution or disgorgement of profits. Id.

PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY
JUDGMENT RE: DEFENDANT'S DUTY TO INDEMNIFY - 10
No. C07-0636 MJP

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

On February 15, 2007, Judge Canova entered an order granting plaintiffs attorneys' fees

and a final judgment. Id., Ex. X. The court described the amounts to be paid to the named

plaintiff and the class members in terms of "compensatory damages," i.e., the amounts plaintiffs

contributed toward the charge and thus purportedly lost, not the total profits Virginia Mason

realized, the total facility charged received by Virginia Mason, or some other form of

disgorgement or restitutionary recovery. Specifically, the order reads:

> In favor of the named plaintiff, DeLois Gibson, in the amount of $153.97,
> representing the amount she paid towards the hospital facility charge for services
> rendered on September 7, 2004.

* * *

> In the full amount paid by the Class member for a hospital facility charge imposed
> at Virginia Mason's downtown clinic for outpatient services . . . .

Id., Ex. X at 6-7 (emphasis added). The court ordered that the "damages" be paid within 31 and

180 days after entry of the judgment. Id. at 8. Consistent with plaintiffs' allegations and

damages theories, the final judgment did not provide for restitution or disgorgement of profits on

account of the facility charges received by Virginia Mason. Id. Pursuant to the agreed-to offer

of judgment and final judgment entered in the Gibson Litigation, Virginia Mason has: (a) paid

$608,011.37 (inclusive of interest) to class members; and (b) removed charges from class

members accounts of an amount totaling $627,425.93. Declaration of MaryAnne Olmstead in

Supp. of Pl.'s Cross-Mots. for Partial Summ. J. ¶ 2.

## D. Executive Risk Does Not Dispute Virginia Mason Paid "Monetary Damages"; It Rejects Coverage Relying on an Implied, Public-Policy Based Exclusion.

The D&O Policy defines "Loss" as "any monetary damages or settlements which an

Insured is obligated to pay as a result of any Claim." Chafetz Decl., Ex. A at End. No. 23, ¶ (2).

Executive Risk has not disputed that the final judgment requires Virginia Mason to pay

PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY
JUDGMENT RE: DEFENDANT'S DUTY TO INDEMNIFY - 11
No. C07-0636 MJP

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

"monetary damages or settlements . . . as a result of [a] Claim."[2]  Snyder Decl., Exs. A-D.

Rather, Executive Risk maintains that the "Loss" is subject to an exclusion, <u>not</u> found in the

policy, that would exclude "restitutionary" "amounts paid in disgorgement" and that the damages

paid to class members constitute such amounts. <u>Id.</u>, Ex. D at 2.

## III.   ARGUMENT AND AUTHORITIES

Executive Risk cannot establish that this extra-contractual exclusion applies to oust

Virginia Mason of coverage.  Because the facts are not in dispute, Virginia Mason is entitled to a

partial summary judgment that Executive Risk has a duty to indemnify Virginia Mason for the

<u>Gibson</u> Litigation settlement payment.

### A.   Executive Risk Bears the Burden of Proving the Applicability of an Exclusion.

Once the policyholder has established a prima facie case of coverage—a matter not in

dispute here—it is the insurer's burden to establish that coverage is precluded by a policy

exclusion.  <u>Diamanco, Inc. v. Aetna Cas. & Sur. Co.</u>, 97 Wn. App. 335, 337, 983 P.2d 707

(2000); Thomas V. Harris, <u>Washington Insurance Law</u> § 6.10 (2d ed. 2006).  Accordingly, on

these cross-motions for summary judgment, Executive Risk bears the burden of establishing that

the facts fall within the "exclusion" on which it relies.  <u>See also</u> <u>American Star Ins. Co. v. Grice</u>,

121 Wn.2d 869, 875, 854 P.2d 622 (1993).

---

[2] Executive Risk acknowledged Virginia Mason's payment of class counsel's attorneys'
fees is "Loss"—"monetary damages" "an Insured is obligated to pay as a result of any Claim"—
and has, therefore, indemnified Virginia Mason for this payment.  Snyder Decl., Ex. B at 2.

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

**B.** **Executive Risk's Reliance on an Implied Disgorgement Exclusion Lacks Merit As a Matter of Law Because the <u>Gibson</u> Plaintiffs Undisputedly Sought and Virginia Mason Paid "Compensatory Damages" Under the WCPA Measured by the "Actual Damages" or "Loss" to Plaintiffs—<u>Not</u> Restitution or Disgorgement of Profits Measured by the "Gain" to Virginia Mason.**

**1.** **Executive Risk's Argument Rests Solely on a Misapplication of <u>Level 3 Communications, Inc. v. Federal Ins. Co.</u>, 272 F.3d 908 (7th Cir. 2001).**

Executive Risk's argument that Virginia Mason's payment is a "disgorgement of profits" or "restitution," not insurable "Loss" as payment for compensatory damages, is based on a misapplication of a general, public-policy-based rule announced by the Seventh Circuit in <u>Level 3 Comms., Inc. v. Federal Ins. Co.</u>, 272 F.3d 908 (7th Cir. 2001). <u>See also</u> Snyder Decl., Ex. D at 2. <u>Level 3</u> held, in a securities fraud case, that where the focus of a plaintiff's damages theory was not on the plaintiff's actual loss, but on insured's "ill-gotten gain" resulting from the insured's fraud (i.e., a disgorgement or restitutionary measure of damages), the judgment or settlement owed was not covered "loss" under the D&O policy at issue in that case. The Seventh Circuit crafted this implied exclusion to prevent insurance from being used to "insure a thief against the cost to him of disgorging the proceeds of the theft." <u>Id.</u> at 910; <u>see also id.</u> at 911 ("All that the plaintiffs in the underlying suit obtained was . . . Level 3's gain from its officers' misbehavior."). The Seventh Circuit looked to the method and calculation of the relief sought— the "difference between the value of the stock at the time of trial and the price [plaintiffs] had received for stock from Level 3"—and noted it was essentially "restitutionary in character." <u>Id.</u> at 910. The court reasoned that this form of remedy "seeks to deprive the defendant of the net benefit of the unlawful act," which is "equivalent to seeking to impress a constructive trust on the property." <u>Id.</u> at 911. The Seventh Circuit stated that words used to describe the actual

PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT RE: DEFENDANT'S DUTY TO INDEMNIFY - 13 No. C07-0636 MJP

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

settlement or judgment do not dictate the result; rather, a court must consider the form of the actual relief sought. Id. at 911.

### a. The Ninth Circuit Has Clarified That Applying Level 3 Requires Looking to the Allegations in the Underlying Litigation and the Litigants' Understanding of the Damages Theories Asserted.

The Ninth Circuit has twice reversed summary judgments where the district courts had applied the Level 3 implied exclusion in favor of insurers and the relief sought was at least partly compensatory in nature. In Unified Western Grocers, Inc. v. Twin City Ins. Co., 457 F.3d 1106, 1115 (9th Cir. 2006), a corporate and accounting fraud/conspiracy case, the Ninth Circuit reversed a Hawaii District Court's summary judgment ruling that the relief sought was restitutionary in nature and thus uninsurable "loss" under the D&O policy. The Ninth Circuit examined "the allegations and asserted claims in the Underlying Complaint" and asked whether they "necessarily restrict[ed] all potential recovery to restitution." Id. at 1115. Although restitution was sought in the complaint, so too were compensatory damages. Id. Notably, in Unified Western Grocers, a review of the allegations in the underlying complaint alone warranted reversing summary judgment. Id.

A second, recent Ninth Circuit decision involving the same issue—Pan Pacific Retail Properties, Inc. v. Gulf Ins. Co., 471 F.3d 961 (9th Cir. 2006)—reached the same result and for the same reasons. Unlike Unified Western Grocers, however, in Pan Pacific the insured was seeking coverage for a prior settlement payment. Id. at 967. The underlying settlement resolved a fraud-based claim involving a corporate merger. Id. at 964-65. In the coverage action, the California District Court determined that the settlement payment was uninsurable because the payment represented only additional consideration wrongfully withheld in the merger. Id. at 966. The Ninth Circuit reversed. Id. at 970. As in Unified Western Grocers, the Ninth Circuit

PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT RE: DEFENDANT'S DUTY TO INDEMNIFY - 14
No. C07-0636 MJP

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

stated that the question of insurability turned not on the labels placed on the asserted claims, but

on the nature of the relief sought by the plaintiff:

> An insurer is not required to provide coverage for claims seeking the return of
> something wrongfully received, but must still indemnify for claims that seek
> compensation for injury suffered as a result of the insured's conduct.

Id. at 966-67 (emphasis added). The court framed the issue as:

> whether any genuine issues of material fact remain as to the nature of the claims
> reflected in the settlement and whether any of these claims may have sought non-
> restitutionary compensation for injuries suffered by the shareholders, which
> would be covered under the insurers' Policies.

Id. at 967. Despite the fact that certain claims in the underlying complaint expressly sought

uninsurable restitution, the insureds presented evidence of an alternative theory of compensatory

damages at plaintiffs' disposal as to other asserted claims. Id. at 968-69. The insurers replied

that this theory of compensatory damages was never actually advanced during the underlying

litigation. Id. at 969 n.6. However, the Ninth Circuit held there was "disputed and conflicting

evidence" on the issue that warranted a reversal and remand for factual findings. Id. at 970.

### b. The Gibson Plaintiffs Undisputedly Sought and Received "Compensatory Damages," Not Restitution or Disgorgement and Therefore the Level 3 Exclusion is Inapposite as a Matter of Law.

Applying the same rationale set forth in Level 3—and more specifically by the Ninth

Circuit in Unified Western Grocers and Pan Pacific—leads to only one conclusion here: the

relief sought (and obtained) in the Gibson Litigation was compensatory damages, not

restitution/disgorgement, and thus is not subject to a Level 3 implied exclusion. Whereas in

Unified Western Grocers and Pan Pacific summary judgment was not warranted based on factual

disputes (this, despite the fact that the plaintiffs in those cases actually had asserted a claim for

restitution), here there can be no dispute about the nature of the relief at issue. Restitution is

based on the goal of avoiding unjust enrichment, the essence of which is recovering the benefit

realized by the defendant—i.e., the "gain"—not the actual harm, injury, or loss to the plaintiff.

Seattle Prof'l Eng'g Emps. Ass'n v. Boeing Co., 139 Wn.2d 824, 838, 991 P.2d 1126 (2000);

James M. Fischer, Understanding Remedies § 50 (1999). Here, both the underlying claims for

relief asserted by the Gibson plaintiffs and the parties' and the Court's understanding thereof

remove any conceivable fact issue that the plaintiffs did not seek Virginia Mason's "gain" but

rather only the loss sustained by the plaintiffs—i.e., their "compensatory damages." The

evidence is abundant and undisputed:

- The facility charge at the center of the Gibson Litigation was paid through contributions by the patient and their health plan (if any). However, unlike the underlying litigation in Level 3, Unified Western Grocers and Pan Pacific, the Gibson plaintiffs' Complaint makes clear that, other than treble damages and attorneys' fees, the only monetary relief sought was "compensatory damages." Plaintiffs did not seek disgorgement of profits, restitution, or any other sort of equitable remedy measured by amounts allegedly retained wrongfully by Virginia Mason (e.g., the entire facility charge). See Part II.C.1, supra.

- The actual relief generated by the Gibson Litigation, as reflected in the underlying court's final judgment, makes clear that the class is entitled to receive only the portion of the facility charge to which they contributed—not the entirety of the charge "gained" by Virginia Mason as a restitutionary or disgorgement measure of damages would have provided. See Part II.C.7, supra.

- Throughout two and half years of litigation, the Gibson parties consistently acknowledged plaintiffs were seeking only compensatory damages measured by the portion of the facility charges to which class members contributed, not restitution or disgorgement of the full charges retained by Virginia Mason. As detailed thoroughly in the Statement of Facts above, the Gibson plaintiffs, Virginia Mason, and Judge Canova repeated their respective understanding of plaintiffs' damages case in each of the following stages of the litigation:
  - Complaint (see Part II.C.1, supra);
  - Class Certification and Notice (see Part II.C.2, supra);
  - Class Mailing List (see Part II.C.3, supra);
  - Motion for Summary Judgment re: Lori Mill (see Part II.C.4, supra);
  - Offer of Judgment (see Part II.C.6, supra); and
  - Final Judgment (see Part II.C.7, supra).

PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY
JUDGMENT RE: DEFENDANT'S DUTY TO INDEMNIFY - 16
No. C07-0636 MJP

### c. Had the Gibson Plaintiffs Sought Restitution or Disgorgement of Profits, Summary Judgment Dismissing Named Plaintiff Mill's Claim for Her Inability to Prove Harm Would Not Have Been Warranted.

Perhaps the most telling stage of the Gibson Litigation was the summary judgment proceeding regarding the claim of plaintiff Lori Mill. Judge Canova granted Virginia Mason's motion to dismiss Ms. Mill's claim because she had not suffered any "actual damages" that could be compensated by the class action. Her facility charge had been paid by others; she had not contributed anything toward the charge. If, on the other hand, plaintiffs had sought and established entitlement to restitution—or at least created a disputed fact issue relating thereto— they would have been able to present a damages theory predicated not on plaintiffs' respective losses, but rather Virginia Mason's gains. However, plaintiffs never stated such a claim for relief and, thus, the Court dismissed Ms. Mill's case. See Part II.C.4, supra.

Level 3 and subsequent cases caution against relying merely on labels and, instead, require courts to examine more closely the nature of the relief at issue. Here, both the labels repeatedly used by the parties and Judge Canova, as well as a close examination of the nature of relief, provide a consistently clear understanding that the relief sought by the Gibson plaintiffs was compensatory in nature. The various examples of underlying pleadings and motions at the parties' disposal remove any guesswork in this regard. Summary judgment rejecting Executive Risk's reliance on an implied disgorgement policy exclusion is warranted on this basis alone.

### 2. The Level 3 Rule—an Implied Public Policy Exclusion Against Insuring for "Theft"—Would Not Apply to Preclude a Washington Policyholder's Coverage for WCPA Loss in Any Event.

As discussed above, the undisputed facts of the Gibson Litigation warrant summary judgment for Virginia Mason even were a Level 3 rule applied to this case. Washington public

policy and the rules governing the proper interpretation of insurance policies, however, establish

that the Washington courts would reject the sweeping public-policy pronouncement in Level 3.

### a. The Public Policy Basis for Level 3 Has Not Been Articulated in Washington and is Inconsistent with the Elements of the WCPA.

Courts have not applied the Seventh Circuit's holding in Level 3 where the underlying

cause of action did not require actual fraud or other similar bad intent on the part of the

policyholder. Level 3 involved securities fraud, likened the challenged conduct to stealing

money—i.e., theft—and reasoned "that if such an insurance policy did insure a thief against the

cost of him of disgorging the proceeds of the theft it would be against public policy and so would

be unenforceable."[3] Level 3, 272 F.3d at 910. The Ninth Circuit has applied the Level 3 rule in

similar fraud-based contexts but only after having analyzed the applicable state public policy to

determine whether there exists a similar public policy of precluding insurance coverage for

restitution or disgorgement. See, e.g., Unified Western Grocers, 457 F.3d at 1115 (examining

California law); Pan Pacific, 471 F.3d at 966-67 (same).

No Washington court has ever applied Level 3, and the courts and the state legislature

have not stated any similar public-policy basis for ousting a policyholder's D&O coverage for

payment of WCPA damages. This may be due to the fact that, unlike the scienter or other "bad

intent" requirements of securities fraud and other fraud-based claims, the WCPA does not

require a showing of an intent to deceive. Dwyer v. J.I. Kislak Mortg. Corp., 103 Wn.App. 542,

547, 13 P.3d 240 (2000); see also Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.,

---

[3] The defendants in the underlying litigation had stolen a company from the plaintiffs and never had any right to possess the company. The defendants had to disgorge the amount by which plaintiffs had been injured and defendants' total resulting profits. From the time they stole the company, the company's stock had appreciated. Defendants were liable for the entire appreciation amount; thus the court's reference to a "constructive trust." 272 F.3d at 911.

PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT RE: DEFENDANT'S DUTY TO INDEMNIFY - 18
No. C07-0636 MJP

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

105 Wn.2d 778, 780, 719 P.2d 531 (1986) (WCPA elements). A plaintiff may establish WCPA

liability without proving the defendant is the sort of "thief" the Seventh Circuit envisioned in

Level 3. Id. Innocent mistakes or negligence (what businesses typically purchase insurance to

cover) may suffice to establish WCPA liability. See, e.g., Bowers v. Transamerica Title Ins. Co.,

100 Wn.2d 581, 591-92, 675 P.2d 193 (1983). Here, in fact, plaintiffs conceded the facility

charge itself was perfectly legal and, after the Differential Pricing Claim was dismissed, viewed

their claim as one "exclusively" addressing whether the charge was disclosed properly.

> **b. Applying Level 3's Public Policy Exclusion to Preclude Coverage for WCPA Damages Would Conflict With Washington's Principles of Insurance Policy Interpretation.**

Even were one to view a public policy against insuring payments of a restitutionary

nature as "good public policy," such a rule still would not apply here. Before public policy can

be considered when construing an insurance policy, the public policy must be "convincingly

expressed" in state statutes or court decisions. Fluke Corp. v. The Hartford Acc. & Indem. Co.,

145 Wn.2d 137, 144, 34 P.3d 809 (2001). Neither has occurred here.

Moreover, although public policy has been invoked to expand coverage in Washington,

the Washington Supreme Court has instructed courts to avoid adding extra-contractual

exclusions to invalidate coverage. In refusing to read into a policy a public-policy based

exclusion for malicious prosecution claims, the Washington Supreme Court held:

> We have not previously invalidated on public policy grounds any affirmative grant of coverage made by an insurer.

Id. In casting doubt on the validity of another public policy exclusion—the known loss, or

fortuity, exclusion—the Washington Supreme Court stated:

> We find some discomfort in being asked to give effect to an 'unnamed' exclusion in an insurance contract, an exclusion that purportedly exists not as a matter of

PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT RE: DEFENDANT'S DUTY TO INDEMNIFY - 19 No. C07-0636 MJP

> contract but as a matter of common law. Insurers know how to write exclusions to coverage. We wonder why they have left the fortuity exclusion to courts to find and interpret.... No party has, however, contended fortuity is not part of the coverage equation here, so we leave any misgivings we may have to another day.

Aluminum Co. of Am. v. Aetna Cas. & Sur. Co., 140 Wn.2d 517, 556 n.15, 998 P.2d 856 (2000) (emphasis added); see also Boeing Co. v. Aetna Cas. & Sur. Co., 113 Wn.2d 869, 876 n.1, 784 P.2d 507 (1990) (noting "absence of public policy in the construction of insurance contracts" despite that case presented "grave" public policy issue).

In sum, the Washington Supreme Court has cast doubt on the validity of extra-contractual, public-policy based exclusions as a whole and certainly has not adopted the draconian version of the Level 3 exclusion advanced here by Executive Risk (reading Level 3 as excluding WCPA damages). Thus, while it is doubtful that the Level 3 exclusion has any place at all in Washington insurance coverage litigation, at the very least, the doctrine should be applied narrowly rather than with the broad brush Executive Risk urges upon this Court.

Even were the Court to consider public policy, the Level 3 exclusion proposed by Executive Risk would be overridden by the countervailing and "strong" public policy favoring settlement of claims. Because the Level 3 rule functions as a coverage exclusion, it must be construed "narrowly . . . for the purpose of providing maximum coverage for the insured." George v. Farmers Ins. Co. of Wash., 106 Wn. App. 430, 439, 23 P.3d 552 (2001); see also, e.g., Federal Ins. Co. v. Continental Cas. Co., No. 2:05-cv-305, 2006 U.S. Dist. LEXIS 85323, at *69-79 (W.D. Pa. Nov. 22, 2006) (construing Level 3 exclusion "narrowly"). On the other hand, Washington has stated a "strong public policy of encouraging settlements." Seafirst Center Ltd. P'ship v. Erickson, 127 Wn.2d 355, 366, 898 P.2d 299 (1995) (emphasis added); see also City of Seattle v. Blume, 134 Wn.2d 243, 258, 947 P.2d 223 (1997) (same). Because the public policy

PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT RE: DEFENDANT'S DUTY TO INDEMNIFY - 20
No. C07-0636 MJP

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

of encouraging settlements operates here as an inclusion of coverage—settlement is facilitated by maximizing a defendant's available funds, including available insurance coverage—it would be construed "liberally" in favor of coverage. State Farm Mut. Auto. Ins. Co. v. Ruiz, 134 Wn.2d 713, 718, 952 P.2d 157 (1998). Accordingly, if public policy were to be considered at all, then the balance would weigh in Virginia Mason's favor.

This conclusion accords with other rules of policy interpretation in Washington. The Court's refusal to enforce an unstated, public-policy based exclusion will promote the goal of ensuring carriers draft clear policy language (which Executive Risk has not done). Dairyland Ins. Co. v. Ward, 83 Wn.2d 353, 359, 517 P.2d 966 (1974) (insurer bears burden to draft "clear and unmistakable [policy] language"). This goal is especially laudable here. If an implied, public-policy based exclusion allowed Executive Risk to escape its obligation to provide D&O indemnity coverage for Virginia Mason's WCPA liability, the insurance industry would immunize itself from virtually every type of consumer suit under the WCPA. This is not how policy exclusions are meant to work. Boeing v. Aetna, 113 Wn.2d at 887 ("The [insurance] industry knows how to protect itself and it knows how to write exclusions and conditions.").

## IV. CONCLUSION

There is no factual dispute that the Gibson plaintiffs sought and received WCPA compensatory damages, not restitution or disgorgement. Executive Risk's reliance on an implied, public-policy-based exclusion that would preclude indemnity coverage for disgorgement payments of a restitutionary nature therefore lacks merit as a matter of law. Executive Risk's position, moreover, assumes such an exclusion not expressed in the policy would even apply in Washington where the courts have stated they have never before applied "public policy" to oust a policyholder of coverage. If Executive Risk did not want to be liable

PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT RE: DEFENDANT'S DUTY TO INDEMNIFY - 21 No. C07-0636 MJP

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

for a policyholder's "Loss" arising out of a WCPA settlement, Executive Risk should have

written its D&O policy differently. The time has come for Executive Risk to make good on its

promise to provide the coverage for which Virginia Mason paid. Virginia Mason's motion for

partial summary judgment should be granted. A proposed order is submitted herewith.

DATED this 2nd day of August 2007.

**GORDON TILDEN THOMAS & CORDELL LLP**

By_____

Jeffrey I. Tilden, WSBA #12219
Christie L. Snyder, WSBA #28900
Mark A. Wilner, WSBA #31550
Attorneys for Plaintiff Virginia Mason Medical Center

PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY
JUDGMENT RE:  DEFENDANT'S DUTY TO INDEMNIFY - 22
No. C07-0636 MJP

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

## CERTIFICATE OF SERVICE

I hereby certify that on August 2, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following.

John D. Wilson, Jr., WSBA# 4828
Alfred E. Donohue, WSBA #32774
Wilson Smith Cochran Dickerson
1215 Fourth Avenue, Suite 1700
Seattle, WA 98161-1007
Telephone:    623-4100
Facsimile:    623-9273
E-mail: Wilson@wscd.com
        Donohue@wscd.com

( ) Mail        ( ) Hand Delivery
( ) Fax         ( ) Federal Express

### GORDON TILDEN THOMAS & CORDELL LLP


By   _s/Christie L. Snyder_
    Jeffrey I. Tilden, WSBA #12219
    Christie L. Snyder, WSBA #28900
    Mark A. Wilner, WSBA #31550
    1001 Fourth Avenue, Suite 4000
    Seattle, WA 98154-1007
    Telephone: (206) 467-6477
    Facsimile: (206) 467-6292
    Email: jtilden@gordontilden.com
    Email: csnyder@gordontilden.com
    Email: mwilner@gordontilden.com

PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY
JUDGMENT RE: DEFENDANT'S DUTY TO INDEMNIFY - 23
No. C07-0636 MJP

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292