1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45

THE HONORABLE MARSHA J. PECHMAN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| VIRGINIA MASON MEDICAL CENTER, a Washington nonprofit corporation, | NO. C07-0636 MJP |
|---|---|
| Plaintiff, | PLAINTIFF'S CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT RE: DUTY TO PAY DEFENSE EXPENSES |
| v. | |
| EXECUTIVE RISK INDEMNITY INC., a Delaware stock insurance company, | NOTED ON MOTION CALENDAR: Friday, August 24, 2007 |
| Defendant. | |

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45

# TABLE OF CONTENTS

I.      INTRODUCTION ..................................................................................................1

II.     STATEMENT OF FACTS ...................................................................................2

        A.      The Gibson Class Asserted Two WCPA Causes of Action:
                Nondisclosure of Facility Charges and Differential Pricing of
                Medical Charges. ...................................................................................2

        B.      The Policy Provides 100 Percent Coverage For Loss From
                Non-Antitrust Claims and 60 Percent Coverage for Loss
                From Antitrust Claims. ..........................................................................3

        C.      Executive Risk Admits that the Nondisclosure Claim Does Not Fall
                Within the Antitrust Endorsement. ........................................................5

III.    ARGUMENT AND AUTHORITIES...................................................................6

        A.      The Policy Provides Full Coverage for Defense Costs Related to
                the Nondisclosure Claim Regardless of When Virginia Mason
                Incurred the Costs. .................................................................................6

                1.      The Plain Meaning of the Policy Requires Full Reimbursement
                        of All Defense Costs Related to the Nondisclosure Claim............7

                2.      Washington's Rules of Policy Interpretation Support Virginia
                        Mason..................................................................................8

                        a.      Executive Risk Failed to Draft "Clear and Unmistakable
                                Language."................................................................8

                        b.      The Court Must Resolve Any Ambiguities in Virginia
                                Mason's Favor. .........................................................9

        B.      Executive Risk Can Allocate Defense Costs Only If They Are Not
                Reasonably Related to the Covered Claim. .........................................10

        C.      Executive Risk Bears the Burden of Allocating Defense Costs
                Between the Fully-Covered Claim and the Partially-Covered Claim........12

IV.     CONCLUSION...................................................................................................12

PLAINTIFF'S CROSS MOTION FOR PARTIAL SUMMARY
JUDGMENT RE: DUTY TO PAY DEFENSE EXPENSES - i
No. C07-0636 MJP

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

# TABLE OF AUTHORITIES

## Cases

Am. Nat'l Fire Ins. Co. v. B&L Truck. & Const. Co., 134 Wn.2d 413, 951 P.2d 250 (1998) ....... 9

Ames v. Baker, 68 Wn.2d 713, 415 P.2d 74 (1966) ....................................................................... 9

Boeing Co. v. Aetna Cas. & Sur. Co., 113 Wn.2d 869, 784 P.2d 507 (1990)................................ 9

Dairyland Ins. Co. v. Ward, 83 Wn.2d 353, 517 P.2d 966 (1974) .................................................. 8

Kitsap County v. Allstate Ins. Co., 136 Wn.2d 567, 964 P.2d 1173 (1998)............................... 7, 9

Nordstrom, Inc. v. Chubb & Son, Inc., 820 F. Supp. 530 (W.D. Wash. 1992) ...................... 10, 12

Nordstrom, Inc. v. Chubb & Son, Inc., 54 F.3d 1424 (9th Cir. 1995).................................... 10, 12

Panorama Vill. Condo. Owners Ass'n Bd. of Dirs. v. Allstate Ins. Co., 144 Wn.2d 130,
    26 P.3d 910 (2001)..................................................................................................................... 7

Phil Schroeder, Inc. v. Royal Globe Ins. Co., 99 Wn.2d 65, 659 P.2d 509 (1983) ........................ 9

Queen City Farms, Inc. v. Central Nat'l Ins. Co., 126 Wn.2d 50, 882 P.2d 703 (1994) .............. 10

Safeway Stores, Inc. v. National Union Fire Ins. Co., 64 F.3d 1282 (9th Cir. 1995).................... 10

## Statutes & Administrative Codes

RCW § 19.86 .................................................................................................................................. 2

PLAINTIFF'S CROSS MOTION FOR PARTIAL SUMMARY
JUDGMENT RE: DUTY TO PAY DEFENSE EXPENSES - ii
No. C07-0636 MJP

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45

## I.    INTRODUCTION

Virginia Mason Health System purchased from Executive Risk Indemnity Company a "Directors, Officers and Trustees Liability Insurance, Including Healthcare Organization Reimbursement, Policy" (the "Policy").  When Plaintiff Virginia Mason Medical Center ("Virginia Mason"), a named Insured Entity under the Policy, was served with a class-action lawsuit filed in King County Superior Court, Gibson v. Virginia Mason Medical Center, No. 05-02198, it promptly notified Executive Risk and obtained consent to retain Davis Wright Tremaine, LLP as defense counsel.  The Policy requires Executive Risk to pay the defense costs Virginia Mason incurs in defending claims.  Executive Risk breached the Policy by refusing to pay for certain defense costs, and Virginia Mason here seeks partial summary judgment on this issue.  (A companion motion filed concurrently concerns Executive Risk's breach of the duty to indemnify Virginia Mason for the damages paid in the Gibson matter (the "Indemnity Motion")).

At issue in this motion is Executive Risk's overly broad, coverage-defeating application of an Antitrust Claims Retention Endorsement ("Antitrust Endorsement").  This endorsement provides coverage for 60 percent of loss, including defense costs, from claims that allege "Antitrust Activity."  The Policy provides for full (100 percent) reimbursement of loss from non-antitrust claims.

As described below and in the Indemnity Motion, the Gibson complaint asserted two Washington Consumer Protection Act claims against Virginia Mason:  a deceptive nondisclosure claim and a differential pricing claim.  The Gibson plaintiffs abandoned the differential pricing claim after Virginia Mason moved for summary judgment.  Executive Risk and Virginia Mason agree that the differential pricing claim alleged "Antitrust Activity" and, therefore, is subject to the Antitrust Endorsement.  Executive Risk and Virginia Mason are also in agreement that the

PLAINTIFF'S CROSS MOTION FOR PARTIAL SUMMARY
JUDGMENT RE: DUTY TO PAY DEFENSE EXPENSES - 1
No. C07-0636 MJP

endorsement does not apply to the nondisclosure claim. Indeed, Executive Risk already has

agreed to pay Virginia Mason for 100 percent of its defense costs incurred after the summary

judgment dismissal of the differential pricing claim. Despite this concession, Executive Risk has

refused to reimburse Virginia Mason fully for the costs related to the defense of the

nondisclosure claim that Virginia Mason incurred before the dismissal of the pricing claim.

Under the Policy language and Washington law, Virginia Mason is entitled to receive 100

percent of its reasonable costs incurred in defending against the nondisclosure claim, regardless

of whether those costs were incurred before or after the dismissal of the differential pricing

claim. Executive Risk may apply the discounted amount set forth in the Antitrust Endorsement

only for those defense expenditures which Executive Risk can prove were not reasonably related

to the defense of the nondisclosure claim.

## II.     STATEMENT OF FACTS

Virginia Mason's Indemnity Motion provides a detailed description of the Gibson

litigation. To avoid unnecessary repetition, we highlight here only those facts relevant to the

present motion.

### A.     The Gibson Class Asserted Two WCPA Causes of Action:  Nondisclosure of Facility Charges and Differential Pricing of Medical Charges.

The Gibson plaintiffs complained of Virginia Mason's practice of billing a hospital

"facility charge" only to those patients seen in its outpatient clinic on its hospital campus in

downtown Seattle. Declaration of Charles Wright in Supp. of Pl.'s Cross-Mots. for Partial

Summ. J., Ex. A. The Gibson plaintiffs asserted two claims for relief, both under Washington's

Consumer Protection Act, RCW 19.86 et. seq. ("WCPA"). Id. In their first claim for "Unfair or

Deceptive Nondisclosure," the Gibson plaintiffs alleged that Virginia Mason had a practice of

PLAINTIFF'S CROSS MOTION FOR PARTIAL SUMMARY
JUDGMENT RE: DUTY TO PAY DEFENSE EXPENSES - 2
No. C07-0636 MJP

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

failing to disclose to patients that it charged more for the same care at its hospital-based outpatient clinic than it did at its other clinics (the "Nondisclosure Claim"). Id. ¶ 53. In their second claim for "Unfair or Deceptive Pricing," the Gibson plaintiffs alleged that Virginia Mason had a practice of "charging significantly more for medical procedures, treatment and care at its outpatient clinic in downtown Seattle than it charges for the same procedures, treatment and care at its other outpatients clinics." (the "Differential Pricing Claim"). Id. ¶ 60.

After many months of litigation, Virginia Mason moved for summary judgment on both claims. Id., Ex. D. On October 12, 2006, the court granted Virginia Mason's Motion for Summary Judgment as to the Differential Pricing Claim but denied the motion as to the Nondisclosure Claim. Id., Ex. S.

On October 24, 2006, Virginia Mason, with Executive Risk's consent, sent an Offer of Judgment to the Gibson class counsel seeking to settle the remaining Nondisclosure Claim. Id., Exs. T, U. Class counsel accepted the Offer of Judgment on November 2, 2006, and the parties provided Class members notice of the proposed entry of Judgment. Id., Exs. V, W. No objections were filed. After briefing and argument regarding the appropriate award of class counsel's attorneys' fees, Judge Canova entered an Order Granting Attorney Fees and Final Judgment on February 15, 2007. Id., Ex. X.

## B. The Policy Provides 100 Percent Coverage For Loss From Non-Antitrust Claims and 60 Percent Coverage for Loss From Antitrust Claims.

The dispute at hand centers on the application of the Policy's Antitrust Endorsement.

The endorsement reads, in pertinent part:

> In consideration of the premium charged, solely with respect to Claims for Antitrust Activities, as such term in defined in paragraph (6) of this endorsements (each an "Antitrust Claim")

PLAINTIFF'S CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT RE: DUTY TO PAY DEFENSE EXPENSES - 3
No. C07-0636 MJP

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

(1)....the Underwriter shall pay on behalf of the Insured the Covered Percentage, as defined in paragraph (2) of this endorsement, of Loss, including Defense Expenses, from each Antitrust Claim first made against an Insured during the Policy Period, or if applicable, the Discovery Period. Any amount of Loss, including Defense Expenses, in excess of the Covered Percentage shall be borne by the Insured uninsured and at their own risk (the "Insured Percentage").

(2) The term <u>"Covered Percentage" means sixty percent (60%)</u>.

\* \* \*

(6) Solely for the purpose of this endorsement, the term "Antitrust Activity" means any actual or alleged:  price fixing; restraint of trade; monopolization; unfair trade practices; or violation of the Federal Trade Commission Act, the Sherman Act, the Clayton Act, or any other federal statute involving antitrust, monopoly, price fixing, price discrimination, predatory pricing or restraint of trade activities, or of any rules or regulations promulgated under or in connection with any of the foregoing statutes, or of any similar provision of any federal, state or local statute , rule or regulation or common law.

Declaration of Lynne Chafetz in Supp. of Pl.'s Cross-Mots. for Partial Summ. J., Ex. A at End.

No. 20 (emphasis added).

The applicable general insuring agreement for claims that do not fall within the Antitrust

Endorsement provides that "the Underwriter will pay on behalf of the Insured Entity [Virginia

Mason] Loss from Claims first made against it during the Policy Period." Id. at 1, ¶ 1.(C). A

"Claim" is:

(1) written notice received by an Insured that any person or entity intends to hold any Insured responsible for a Wrongful Act, or (2) a legal, injunctive or administrative proceeding against an Insured Person solely by reason of his or her status as such.

Id. at 1, ¶ II.(B).  Whereas the Policy provides for only 60 percent for Antitrust Claims, there is

not such limitation on Claims that fall within the general insuring agreement.  The Policy

provides 100 percent coverage for non-antitrust claims.

PLAINTIFF'S CROSS MOTION FOR PARTIAL SUMMARY
JUDGMENT RE:  DUTY TO PAY DEFENSE EXPENSES - 4
No. C07-0636 MJP

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

The Policy includes "Defense Expenses" in the definition of "Loss." <u>Id.</u> at End. No. 23.

"Defense Expenses" include the "reasonable legal fees and expenses incurred by an Insured in

defense of a Claim…." <u>Id.</u> at p.2, ¶ II.(C). Thus, under the Policy, Executive Risk promised to

pay Virginia Mason at 100 percent for the reasonable Defense Expenses incurred in defending a

non-Antitrust Claim, and at 60 percent for the reasonable Defense Expenses incurred in

defending an Antitrust Claim.

C.     **Executive Risk Admits that the Nondisclosure Claim Does Not Fall Within the Antitrust Endorsement.**

Executive Risk initially took the position that the Antitrust Endorsement required it to

pay only 60 percent of <u>all</u> defense costs in the <u>Gibson</u> litigation. Chafetz Decl., Ex. D. After the

<u>Gibson</u> court's dismissal of the Differential Pricing Claim, however, Executive Risk conceded

that the remaining Nondisclosure Claim did not fall within the scope of the Antitrust

Endorsement and agreed to pay 100 percent of the ongoing litigation costs. Declaration of

Christie Snyder in Supp. of Pl.'s Cross-Mots. for Partial Summ. J., Ex. B. In responding to a

November 3, 2006 letter from counsel for Virginia Mason, Executive Risk stated:

> You [counsel for Virginia Mason] state that "while it is correct that the allegations of the class action are not antitrust in nature, Chubb is incorrect that the remaining class action claim falls within the scope of the endorsement." <u>We agree based upon the recent court order.</u>
>
> <u>As the only remaining count against [Virginia Mason] is for deceptive non disclosure of facility charge, the Antitrust Endorsement appears to be no longer implicated.</u>
>
> [Virginia Mason] filed summary judgment and the plaintiffs abandoned the differential pricing claim, thus <u>the court granted summary judgment as to the deceptive pricing count, the count which triggered the applicability of the antitrust endorsement. Once that count was dismissed, the antitrust co-insurance provision no longer applied.</u> In an effort to reach an accord, [Executive Risk] will pay 100% of defense expenses relating to the litigation following the dismissal of the antitrust count.

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

Id. (emphasis added). (For a discussion of the reasons both Virginia Mason and Executive Risk agree the Nondisclosure Claim is not subject to the Antitrust Endorsement, see Snyder Dec., Ex. A.)

Executive Risk continues to refuse, however, to pay the full costs related to the defense of the Nondisclosure Claim that Virginia Mason incurred prior to the dismissal of the Differential Pricing Claim. Instead, Executive Risk, citing the Antitrust Endorsement, has only consented to pay 60 percent of these defense costs. Id., Ex. D.[1]

## III.   ARGUMENT AND AUTHORITIES

### A.   The Policy Provides Full Coverage for Defense Costs Related to the Nondisclosure Claim Regardless of When Virginia Mason Incurred the Costs.

Virginia Mason and Executive Risk agree that the Differential Pricing Claim falls within the Antitrust Endorsement because it alleges "Antitrust Activity" as defined in the Policy. As explained above, both Virginia Mason and Executive Risk also concur that the Antitrust Endorsement does not apply to the Nondisclosure Claim. As a result, any defense costs relating to the fully-covered Nondisclosure Claim should be reimbursed at 100 percent regardless of when they were incurred during the course of the litigation. In other words, Virginia Mason is entitled to full reimbursement of its reasonable defense costs related to the defense of the Nondisclosure Claim. It is irrelevant whether Virginia Mason incurred the defense costs prior to or after the dismissal of the partially-covered Differential Pricing Claim. The terms of the Policy and Washington rules of policy interpretation support Virginia Mason.

---

[1] Virginia Mason has incurred costs totaling $697,879.17 in defending the Gibson litigation. Declaration of Mary Anne Olmstead in Supp. of Pl.'s Cross-Mots. for Partial Summ. J., ¶3. Virginia Mason is responsible for the first $250,000, leaving $447,879.17 in fees for which Virginia Mason has sought reimbursement from Executive Risk. See Chafetz Dec., Ex. A at Declarations Page, Item 4.(c) (policy deductible of $250,000). Of this amount, Executive Risk has reimbursed Virginia Mason only $156,232.90. Olmstead Dec., ¶4.

PLAINTIFF'S CROSS MOTION FOR PARTIAL SUMMARY
JUDGMENT RE: DUTY TO PAY DEFENSE EXPENSES - 6
No. C07-0636 MJP

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

**1.    The Plain Meaning of the Policy Requires Full Reimbursement of All
Defense Costs Related to the Nondisclosure Claim.**

Executive Risk's position apparently is that when a complaint contains any antitrust

allegations, along with other fully-covered claims, the entire suit becomes an "Antitrust Claim"

subject to the Antitrust Endorsement.  The plain language of the Policy, however, belies this

reading.  Washington Courts apply the plain meaning of policy language to determine if

coverage exists.  Kitsap County v. Allstate Ins. Co., 136 Wn.2d 567, 576, 964 P.2d 1173 (1998).

Courts must give insurance policies:

> a fair, reasonable, and sensible construction as would be given to the contract by
> the average person purchasing insurance.  The proper inquiry is not whether a
> learned judge or scholar can, with study, comprehend the meaning of an insurance
> contract but instead whether the insurance policy contract would be meaningful to
> the layman.

Panorama Vill. Condo. Owners Ass'n Bd. of Dirs. v. Allstate Ins. Co., 144 Wn.2d 130, 137-138,

26 P.3d 910 (2001) (internal quotations and citations omitted) (emphasis added).

Here, the Policy provides that Executive Risk will pay 60 percent "of Loss including

Defense Expenses, from each Antitrust Claim."  Chafetz Decl., Ex. A at End. No. 20 (emphasis

added).  The Policy defines "Antitrust Claim" in a parenthetical found in the preamble to the

Antitrust Endorsement:

> In consideration of the premium charged, solely with respect to Claims for
> Antitrust Activities, as such term in defined in paragraph (6) of this endorsement
> (each an "Antitrust Claim")

Id. (emphasis supplied).  Paragraph (6) of the endorsement, referenced in the above-quoted

language, simply lists multiple antitrust violations for the definition of "Antitrust Activity":

> the term "Antitrust Activity" means any actual or alleged: price fixing; restraint of
> trade; monopolization; unfair trade practices; or violation of the Federal Trade
> Commission Act, the Sherman Act, the Clayton Act, or any other federal statute
> involving antitrust, monopoly, price fixing, price discrimination, predatory pricing

PLAINTIFF'S CROSS MOTION FOR PARTIAL SUMMARY
JUDGMENT RE:  DUTY TO PAY DEFENSE EXPENSES - 7
No. C07-0636 MJP

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45

or restraint of trade activities, or of any rules or regulations promulgated under or in connection with any of the foregoing statutes, or of any similar provision of any federal, state or local statute, rule or regulation or common law

Id.

Reading the preamble and the definition of "Antitrust Activity" contained in paragraph

(6) together, the Policy provides:

In consideration of the premium charged, solely with respect to Claims for any actual or alleged:  price fixing; restraint of trade; monopolization; unfair trade practices; or violation of the Federal Trade Commission Act, the Sherman Act, the Clayton Act, or any other federal statute involving antitrust, monopoly, price fixing, price discrimination, predatory pricing or restraint of trade activities, or of any rules or regulations promulgated under or in connection with any of the foregoing statutes, or of any similar provision of any federal, state or local statute, rule or regulation or common law (each an "Antitrust Claim").

We submit that an "average person purchasing insurance" would understand the language

"each an Antitrust Claim" to refer to each of the listed Antitrust Activities – and not, as

Executive Risk claims—to an entire lawsuit alleging both antitrust and non-antitrust claims.

Indeed, nowhere in the Policy could an average purchaser of insurance find language stating that,

if a claim against the policyholder includes both allegations of Antitrust Activity and non-

antitrust allegations, the entire Loss will be paid at 60 percent only.

Here, there was only one allegation of an Antitrust Activity—the Differential Pricing

Claim—thus, it was the only claim subject to the Antitrust Endorsement.

**2.    Washington's Rules of Policy Interpretation Support Virginia Mason.**

**a.    Executive Risk Failed to Draft "Clear and Unmistakable Language."**

Washington's well-established rules of policy interpretation confirm Virginia Mason's

reading of the Policy. The insurance company's burden is to draft "clear and unmistakable

[policy] language." Dairyland Ins. Co. v. Ward, 83 Wn.2d 353, 359, 517 P.2d 966 (1974).  Had

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

Executive Risk wished to pay only 60 percent of Loss for suits alleging both antitrust claims and

other non-antitrust claims, it could have drafted clear policy language to accomplish that result.

"The [insurance] industry knows how to protect itself and it knows how to write exclusions and

conditions." Boeing Co. v. Aetna Cas. & Sur. Co., 113 Wn.2d 869, 887, 784 P.2d 507 (1990).

By way of example only, Executive Risk could have included—but did not—a version of

the following language in the Policy:

> The Underwriter shall pay on behalf of the Insured the Covered Percentage of
> Loss, including Defense Expenses, from each Antitrust Claim or from a Mixed
> Claim. A "Mixed Claim" is a claim, action or suit in which both Antitrust Claims
> and other non-Antitrust Claims are alleged.

The Policy does not include such language (or anything similar), and the Court should refuse to

read such language into the Policy.

### b. The Court Must Resolve Any Ambiguities in Virginia Mason's Favor.

Further, Washington courts stress that "any doubts, ambiguities and uncertainties arising

out of the language used in the policy must be resolved in [the policyholder's] favor." Phil

Schroeder, Inc. v. Royal Globe Ins. Co., 99 Wn.2d 65, 69, 659 P.2d 509 (1983). A term is

ambiguous if it is susceptible to two different but reasonable interpretations. Kitsap County, 136

Wn.2d at 576. When "a policy is fairly susceptible of two different interpretations, that

interpretation most favorable to the insured must be applied, even though a different meaning

may have been intended by the insurer." Ames v. Baker, 68 Wn.2d 713, 717, 415 P.2d 74

(1966).

At the very worst for Virginia Mason, the term "Antitrust Claim" is ambiguous—

meaning both Virginia Mason's and Executive Risk's interpretation are reasonable—and thus

must be construed in favor of coverage. Am. Nat'l Fire Ins. Co. v. B&L Truck. & Const. Co.,

PLAINTIFF'S CROSS MOTION FOR PARTIAL SUMMARY
JUDGMENT RE: DUTY TO PAY DEFENSE EXPENSES - 9
No. C07-0636 MJP

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

134 Wn.2d 413, 435, 951 P.2d 250 (1998); Queen City Farms, Inc. v. Central Nat'l Ins. Co., 126

Wn.2d 50, 83, 882 P.2d 703 (1994). It is not enough for Executive Risk to show that its

coverage-defeating interpretation of the term is plausible or even the preferred reading of the

contract. Virginia Mason's interpretation of the term is at least "rational" and thus must be

applied.

For these reasons, the Antitrust Endorsement does not reduce Executive Risk's obligation

to pay the full defense costs related to the Nondisclosure Claim incurred prior to the dismissal of

the Differential Pricing Claim.

**B.**     **Executive Risk Can Allocate Defense Costs Only If They Are Not Reasonably Related to the Covered Claim.**

Washington law on the issue of allocation of defense costs is settled. An insurer may not

allocate defense costs between covered and uncovered claims unless defense of the uncovered

claim is not reasonably related to defense of the covered claim.

Under this "reasonably related" test:

> No right of allocation exists for the defense of non-covered claims that are
> reasonably related to the defense of covered claims....So long as the preparation
> of the defense would have been undertaken for the claims against the officers and
> directors [the covered claims], incidental benefit to other parties [the uncovered
> claim] does not provide a basis for allocation.

Nordstrom, Inc. v. Chubb & Son, Inc., 820 F. Supp. 530, 536-37 (W.D. Wash. 1992), aff'd 54

F.3d 1424 (9th Cir. 1995) (quotation omitted) (emphasis supplied). The Ninth Circuit upheld the

Nordstrom trial court's ruling, holding that "[u]nder Washington law, the insurer is liable for all

defense costs if there is no reasonable means of prorating the costs between covered and non-

covered claims." Nordstrom, 54 F.3d at 1436, n.5 (quotation omitted). Similarly, in Safeway

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

Stores, Inc. v. National Union Fire Ins. Co., 64 F.3d 1282, 1289 (9th Cir. 1995), the Ninth

Circuit ruled:

> Defense costs are thus covered by a D&O policy if they are reasonably related to
> the defense of the insured directors and officers [the covered claim], even though
> they may also have been useful in defense of the uninsured corporation [the
> uncovered claim.]

(Emphasis added).

A discussion of the categories of defense costs incurred in the Gibson litigation illustrates

how the "reasonably related" rule works in practice. For example, if the Gibson class had only

asserted the Nondisclosure Claim (and had never asserted the Differential Pricing Claim),

Virginia Mason still would have incurred legal fees relating to, for example, class certification

and class notice. Because the Gibson plaintiffs did assert the Differential Pricing Claim, these

above categories of defense costs also benefited the defense of the Differential Pricing Claim.

However, as these costs also are reasonably related to the defense of the Nondisclosure Claim,

the Policy provides full defense costs coverage at 100 percent.

Washington law requires payment of defense costs that relate to covered claims even

though those defense expenditures also benefit the defense of a completely non-covered claim.

There is no reason this rule would not also apply to defense expenditures that incidentally benefit

the defense of a partly-covered claim, such as the Differential Pricing Claim. It is a distinction

without a difference that there is no "uncovered" claim, but rather a partially-covered claim.

Under Washington law, Executive Risk must pay all defense costs reasonably related to

the defense of the fully covered Nondisclosure Claim, regardless whether those defense

expenditures also benefited the partially-covered Differential Pricing Claim.

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

**C.** **Executive Risk Bears the Burden of Allocating Defense Costs Between the Fully-Covered Claim and the Partially-Covered Claim.**

Because the insurer has the right to allocate loss between covered and uncovered claims, the insurer also bears the burden of allocation of loss. In <u>Nordstrom v. Chubb</u>, the court held that "an insurer providing D&O insurance has the right to allocate defense costs according to covered an uncovered claims in the underlying litigation." 820 F. Supp. at 532. The Ninth Circuit affirmed and held that "allocation is not permitted if an insurer...has made no attempt to separate out the portion of the settlement amount for which it was liable." 54 F.3d at 1430. Although it is the allocation of defense costs rather a settlement amount at issue here, the principle remains the same. Defense costs constitute "Loss" under the Policy, just as any settlement amount would fall within the definition of "Loss." Accordingly, to the extent any allocation is possible, Executive Risk bears the burden to show what costs are not reasonably related to the defense of the Nondisclosure Claim.

## IV. CONCLUSION

The insurance policy Virginia Mason purchased from Executive Risk requires Executive Risk to pay for 100 percent of the expenses reasonably related to Virginia Mason's defense of the Nondisclosure Claim. Executive Risk admits the Nondisclosure Claim does not fall within the ambit of the Antitrust Endorsement. A reasonable interpretation of the Policy term "Antitrust Claim" is that it refers only to the actual antitrust allegations in the <u>Gibson</u> complaint, and not the entire suit against Virginia Mason.

Moreover, under Washington law, it is Executive Risk's burden to allocate, if possible, the defense costs. Executive Risk may not allocate defense costs to the partially-covered

PLAINTIFF'S CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT RE: DUTY TO PAY DEFENSE EXPENSES - 12
No. C07-0636 MJP

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45

Differential Pricing Claim if those defense costs are reasonably related to the defense of the

Nondisclosure Claim, even if the expenditures also benefited the Differential Pricing Claim.

For these reasons, Virginia Mason respectfully requests that the Court grant this motion

and enter the proposed order filed herewith.

DATED this $\underline{2^{nd}}$ day of August, 2007.

**GORDON TILDEN THOMAS & CORDELL** LLP

By _____

    Jeffrey I. Tilden, WSBA #12219
    Christie L. Snyder, WSBA #28900
    Mark A. Wilner, WSBA #31550
    Attorneys for Plaintiff Virginia Mason Medical Center

PLAINTIFF'S CROSS MOTION FOR PARTIAL SUMMARY
JUDGMENT RE: DUTY TO PAY DEFENSE EXPENSES - 13
No. C07-0636 MJP

**GORDON TILDEN THOMAS & CORDELL** LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

## CERTIFICATE OF SERVICE

I hereby certify that on August 2, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following.

John D. Wilson, Jr., WSBA# 4828
Alfred E. Donohue, WSBA #32774
Wilson Smith Cochran Dickerson
1215 Fourth Avenue, Suite 1700
Seattle, WA  98161-1007
Telephone:     623-4100
Facsimile:      623-9273
E-mail:  Wilson@wscd.com
          Donohue@wscd.com
(  ) Mail      (  ) Hand Delivery
(  ) Fax       (  ) Federal Express

### GORDON TILDEN THOMAS & CORDELL LLP

By _____
Jeffrey I. Tilden, WSBA #12219
Christie L. Snyder, WSBA #28900
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154-1007
Telephone:  (206) 467-6477
Facsimile:  (206) 467-6292
Email:  jtilden@gordontilden.com
Email:  csnyder@gordontilden.com

PLAINTIFF'S CROSS MOTION FOR PARTIAL SUMMARY
JUDGMENT RE:  DUTY TO PAY DEFENSE EXPENSES - 14
No. C07-0636 MJP

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292