UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| VIRGINIA MASON MEDICAL CENTER, a Washington nonprofit corporation,<br><br>        Plaintiff,<br><br>    v.<br><br>EXECUTIVE RISK INDEMNITY INC., a Delaware stock insurance company,<br><br>        Defendant. | No. C07-0636 MJP<br><br>ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT |

This matter comes before the Court on the parties' cross motions for summary judgment. (Dkt. Nos. 11, 13 & 14.) Having reviewed those motions and the parties' responses (Dkt. Nos. 20, 22 & 23), all documents submitted in support thereof and the record in this case, and having heard oral argument by the parties, this Court GRANTS Plaintiff Virginia Mason's motions for summary judgment and DENIES Defendant Executive Risk's motion for summary judgment.

**Background**

Virginia Mason Medical Center ("Virginia Mason") runs several outpatient clinics, one of which is connected to the Virginia Mason Hospital in downtown Seattle (the "downtown clinic"). The downtown clinic charges an additional hospital facility charge for services provided. The freestanding clinics do not include this charge. (Wright Decl. Ex. B.) As a result, if a patient chooses to have

ORDER - 1

medical services performed at the downtown clinic, her bill may be significantly higher than if she had chosen to have the same services performed at a freestanding clinic.

In 2005, lead plaintiffs Lori Mill and Delois Gibson filed a class action lawsuit in King County Superior Court against Virginia Mason containing two claims directly related to the facility charge at the downtown clinic (the "Gibson litigation"). (Gibson v. Virginia Mason, King County Superior Court No. 05-2-02198-5SEA). The complaint alleged that Virginia Mason had violated the Washington Consumer Protection Act ("WCPA"), RCW 19.86 et. seq., in two ways: 1) by charging more for the same medical services at the downtown clinic than it did at the freestanding clinics (the "differential pricing claim"); and 2) by failing to disclose to patients the additional "facility charge" at the downtown clinic (the "nondisclosure claim"). The class members sought "compensatory damages for the injury to their business or property caused by this unfair or deceptive act or practice, along with treble damages up to $10,000 per class member, and attorney's fees." (Wright Decl. Ex. A at ¶¶ 57, 63.)

After the Gibson plaintiffs agreed to forego the differential pricing claim, the Superior Court dismissed that claim on Virginia Mason's motion for summary judgment. (Case No. 05-2-02198-5SEA, Dkt. 148). Virginia Mason then submitted an offer of judgment to the plaintiff class offering: 1) to pay each class member a sum equal to the amount which that class member had paid as a facility charge for services at the downtown clinic; 2) to forego collection of any facility charge bills not yet collected; 3) to pay class counsel's attorneys' fees and costs, and; 4) to inform each of its current and future patients of the facility charge policy. (Wright Decl. Ex. U.) The class plaintiffs accepted the offer and the action was settled. (Wright Decl. Ex. V.)

Virginia Mason now brings the current action against its insurer, Executive Risk Indemnity Inc. ("Executive Risk") seeking indemnification for the costs of the Gibson litigation, including the settlement amount and its own defense costs.

ORDER - 2

**Analysis**

Both parties have filed cross motions for summary judgment. Rule 56(c) provides, in part, that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(c). Both parties agree that there are no disputed facts and that the insurance policy should be interpreted and construed under Washington law.

**I. Executive Risk Has a Duty to Indemnify Virginia Mason for the <u>Gibson</u> Settlement**

Executive Risk issued a Reimbursement Policy to Virginia Mason and it is undisputed that the <u>Gibson</u> litigation falls within the time frame of coverage under the Policy. (Wilson Decl. Ex. A.) The Court finds that Executive Risk has a duty to indemnify Virginia Mason for the <u>Gibson</u> settlement because the settlement: 1) is covered under the definition of "loss" in the Policy; and 2) does not fall within one of the policy exclusions.

**1. <u>The Settlement Is Included in the Policy's Definition of "Loss"</u>**

At issue is whether the <u>Gibson</u> settlement is a covered "loss" under the Policy. Under Washington law, the Court must construe an entire contract together giving force and effect to each clause. <u>Morgan v. Prudential Ins. Co.</u>, 86 Wn.2d 432, 434-435 (Wash. 1976) (internal citation omitted). Three relevant clauses in the Policy work together to define a covered "loss." First, the Policy defines "loss" as:

> any monetary damages or **settlements** which an insured is obligated to pay as a result of **any Claim**, including but not limited to punitive or exemplary damages ...where insurable under applicable law...

(Wilson Decl. Ex. A at Endorsement 23) (emphasis added). Second, the Policy includes the following definition of "claim":

> 1) written notice received by an Insured that any person or entity intends to hold any Insured responsible for a **Wrongful Act**, or
> 2) a legal, injunctive or administrative proceeding against an Insured...

ORDER - 3

1  (Wilson Decl. Ex. A at 1) (emphasis added).  Finally, the Policy's definition of "wrongful act"

2  includes:

3      any actual or alleged act, error, **omission**, misstatement, **misleading statement** or
    breach of duty... by an Insured.

4  (Wison Decl. Ex. A at Endorsement 23) (emphasis added).  When these clauses are read together, it is

5  clear that the Policy insures "settlements" resulting from "any claim" against the Insured alleging a

6  "wrongful act" such as an "omission" or "misleading statement."  The Gibson settlement is a "loss"

7  under the Policy because it resulted from a claim alleging that Virginia Mason committed a wrongful

8  act when it failed to disclose facility charges to its patients.  (Wright Decl. Ex. A at 14.)

9      Washington law dictates that a Court's construction of an insurance contract should not result

10  in "an extension or restriction of the policy beyond what is fairly within its terms...." Morgan v.

11  Prudential Ins. Co., 86 Wn.2d 432, 434-435 (Wash. 1976) (internal citation omitted).  The Policy's

12  definition of "loss" clearly includes settlements resulting from claims alleging wrongful conduct.

13  However, Executive Risk asks that the Court restrict the Policy definition by adopting what it calls the

14  "ordinary meaning" of the word "loss":

15 
16      The word "Loss" itself has an ordinary meaning that cannot be ignored.  That
    meaning does not include payments that are purely restitutionary, i.e., a pure
    refund of funds that were not properly obtained, whether through intentional or
17      negligent conduct – like [Virginia Mason's] return of undisclosed hospital facilities
    charges to members of the Gibson class.

18  (Def. Mtn. for Summ. J. at 16) (citing Level 3 Communications Inc. v. Federal Insurance Co., 272

19  F.3d 908 (7th Cir. 2001)).  Executive Risk further argues that:

20 
21      The Gibson claims for refund or forgiveness of hospital facilities charges that class
    members were required to pay [Virginia Mason] is [sic] not a "Loss" within the plain
    meaning of that term because those charges were imposed in an unfair and deceptive
22      manner in violation of the CPA.

23  (Def.'s Resp. at 7.)  Executive Risk's argument is unconvincing.  The Court's construction of a

24  contract cannot "lead to an absurd conclusion, or render the policy nonsensical or ineffective."

25  Morgan v. Prudential Ins. Co., 86 Wn.2d 432, 434-435 (Wash. 1976) (internal citation omitted).

ORDER - 4

Disallowing coverage for the Gibson settlement on the grounds that the funds were wrongfully gained would render nonsensical the Policy's explicit coverage for settlements resulting from a wrongful act. Instead, when construed as a whole, the plain language of the Policy indicates that the Gibson settlement is a covered "loss."

The parties' arguments about whether the settlement is restitutionary or compensatory are misplaced. In Level 3, which is not controlling, the Seventh Circuit held that a settlement in an underlying securities fraud litigation did not constitute a "loss" under the insurance contract because it was restitutionary in nature. 272 F.3d at 910-911. The Court rejects the Seventh Circuit's attempt to characterize the nature of a settlement. A restitution remedy is awarded at the conclusion of litigation once culpability is allocated, while a settlement is a negotiated bargain between two parties who have foregone the right to a finding of culpability.

Even if the Court were to attempt to characterize the nature of the Gibson settlement, it must look to the award sought in the litigation. A private action brought under the WCPA seeks legal damages, not restitutionary damages. The plaintiffs sought compensation for harms caused by a violation of the WCPA by bringing a private action under RCW 19.86.090. ("Any person who is injured... by a violation of [this Act]... may bring a civil action... to recover the actual damages sustained...."). The Washington Supreme Court has indicated that RCW 19.86.090 is intended to compensate individuals for harm caused by violations of the WCPA. Seaboard Surety co. v. Ralph Williams' Northwest Chrysler Plymouth, Inc., 81 Wn.2d 740, 745 (1973).

A restitution remedy is distinct from a damages remedy because "[r]estitiution measures the remedy by the defendant's gain and seeks to force disgorgement of that gain" while "[t]he stated goal of the damages remedy is compensation of the plaintiff for legally recognized losses." D. Dobbs, Law of Remedies, §§ 4.1(1) & 3.1 (West 1993). The Gibson nondisclosure claim did not seek to prevent unjust enrichment or to deprive Virginia Mason of the "net benefit" of its allegedly wrongful act. Compare Level 3, 272 F.3d at 911. Instead, the Gibson complaint (Wright Decl., Ex. A ¶¶ 57, 63),

ORDER - 5

class certification (Id., Ex. F at 12), class notice (Id., Ex. I), class mailing list (Id., Ex. L at 2-3; Ex. M at 3) and final judgment (Id., Ex. U) all offer evidence that the Gibson settlement was calculated by determining the individual harm suffered by each plaintiff and not by assessing Virginia Mason's gain.

**2. The Settlement is Insurable Under Washington Law**

To constitute a "loss" under the Policy, the settlement must also be insurable under Washington law. Executive Risk cites to several cases applying California law for the proposition that "an insurance policy indemnifying the insured against liability due to his [or her] own wilful wrong is void as against public policy." Jaffe v. Cranford Ins. Co., 168 Cal. App. 3d 930, 935 (Cal. Ct. App. 1985) (internal citation and quotation marks omitted); see also Bank of the West v. Industrial Indemnity Company, 2 Cal. 4th 1254, 1266 (Cal. 1992) ("one may not insure against the risk of being ordered to return money or property that has been wrongfully acquired."); accord Unified Western Grocers, Inc. v. Twin City Fire Ins. Co., 457 F.3d 1106 (9th Cir. 2006); Pan Pacific Retail Properties, Inc. v. Gulf Ins. Co., 471 F.3d 961 (9th Cir. 2006). Executive Risk fails to offer authority holding that such a risk is uninsurable under Washington law.

Washington courts have not addressed whether an insurer can provide coverage for the risk of being forced to money that was wrongfully obtained, but the Washington Supreme Court has held that entities may insure against liability for their own wrongful conduct. Fluke Corp. v. Hartford Accident & Indem. Co., 145 Wn.2d 137, 144 (Wash. 2001). In Fluke, the Court found that insurance coverage for the intentional tort of malicious prosecution is not contrary to public policy and neither is coverage for punitive damages. Id. at 144. The Washington Supreme Court has distinctly acknowledged an "absence of public policy in the construction of insurance contracts." Boeing v. Aetna, 113 Wn.2d 869, 876 n. 1 (2001) ("Washington courts rarely invoke public policy to override express terms of an insurance policy."). In Fluke, the Court indicated that public policy must be clearly expressed in a state statute or judicial decision before it can override an insurance policy's explicit coverage. Id. at

1  145 ("The paramount public policy here is the commitment to upholding the plain language of

2  contracts.").

3    Executive Risk's Policy insures Virginia Mason for damages or settlements resulting from

4  claims alleging wrongful acts.  Executive Risk has not supplied any Washington statutes or case law

5  expressing public policy against such coverage.  Because the Washington Supreme Court has indicated

6  that vague public policy arguments should not limit the express language in a policy, the Court finds

7  that the coverage defined in Executive Risk's Policy is insurable under Washington law.

8  **3.  The *Gibson* Settlement is Not Barred from Coverage Under Exclusion III(A) of the Policy**

9    Because Virginia Mason's claim is a covered "loss" under the Policy, Executive Risk can avoid

10  indemnification only if an exclusion in the Policy applies.  Exclusion III(A) bars:

11  
12  > [c]laims brought about or contributed to **in fact** (1) by any dishonest or fraudulent act or omission... or (2) by an Insured gaining any profit, **remuneration** or advantage **to which such Insured was not legally entitled**.

13  
14  (Wilson Decl. Ex. A at 3) (emphasis added).  At issue is whether the phrase "in fact" requires entry of

15  a factual finding that Virginia Mason was not "legally entitled" to the sums in the Gibson settlement

16  before the clause can be triggered and coverage barred.

17    When a phrase in an insurance contract is undefined, the Court must give the phrase its "plain,

18  ordinary, and popular meaning."  Boeing v. Aetna, 113 Wn.2d 869, 877 (1990).  Washington courts

19  have never construed the phrase "in fact" in an exclusionary clause.  The Court adopts the definition

20  given by the Northern District of California which looked to the "ordinary and popular sense" of the

21  phrase and determined that it refers to "something which is put forward as 'objectively real' or which

22  can be 'objectively verified.'"  PMI Mortgage Ins. Co. v. Am. Int'l Specialty Lines Ins. Co., 2006 U.S.

23  Dist. LEXIS *13 24853 (N.D. Cal. 2006).

24    When interpreting the language of an insurance contract, the Court should also consider the

25  intent of the parties at the time of contracting.  Morgan v. Prudential Ins. Co., 86 Wn.2d 432, 434

ORDER - 7

(Wash. 1976). Washington courts apply the "context rule" of contract interpretation and may look to extrinsic evidence to "give meaning to the contract language." Diaz v. National Car Rental Sys., 143 Wn.2d 57, 66 (2001). In a letter to Virginia Mason dated January 27, 2005, Executive Risk reserved the right to deny coverage "[t]o the extent that a finding is entered as to any cause of action which triggers [Exclusion III(A)] (e.g., a finding that the Insured violated the Consumer Protection Act)". (Chafetz Decl., Ex. D at 4). This letter suggests that Executive Risk originally intended to read the phrase "in fact" as requiring a final determination of fact before the exclusion could be triggered.

The Court concludes that the phrase "in fact" requires an entry of some pertinent factual finding before Exclusion III(A) is triggered. Such a finding could result from a final decision on the merits in the underlying case or from a determination by this Court that Virginia Mason was not "legally entitled" to the funds paid to the Gibson plaintiffs. The Court finds that it cannot be "objectively verified" that Virginia Mason was not "legally entitled" to the sum paid in the settlement for three reasons: 1) the Superior court did not reach a final adjudication on the nondisclosure claim; 2) Virginia Mason never admitted that its method of disclosure had been improper; and 3) Executive Risk has not offered this Court any evidence that Virginia Mason's method of disclosing the "facility charges" was illegal. Executive Risk cannot rely on allegations in the Gibson claim as objective verification for the illegality of Virginia Mason's conduct because there is insufficient evidence in the complaint to show that Virginia Mason's method of billing for "facility charges" resulted in an illegal profit. Compare Brown & Lacounte, L.L.P. v. Westport Ins. Corp., 307 F.3d 660, 664 (7th Cir. 2002) (where the underlying complaint directly alleged an illegal profit, the exclusion was triggered); with PMI, 2006 U.S. Dist. LEXIS at *13 (distinguishing Brown on the grounds that the underlying complaint did not directly allege illegal profit and the illegality of the insured's action was disputed).

Because there has been no final adjudication on the merits and Executive Risk has failed to present evidence that Virginia Mason was not legally entitled to the funds paid out in the Gibson

ORDER - 8

1  settlement, the Court cannot enter such a finding and Exclusion III(A) does not bar coverage of the
2  claim.

**II. Executive Risk Has a Duty to Indemnify Virginia Mason for Its Defense Costs**

The Policy includes an Antitrust Endorsement which states that Executive Risk will indemnify Virginia Mason sixty percent of its defense costs for "each Antitrust Claim" brought against the Insured during the Policy period. (Wilson Decl. Ex. A at Endorsement No. 20.) The plain language suggests that Executive Risk will determine whether a claim is an antitrust claim (thereby requiring the discounted rate of reimbursement) on a claim by claim basis. When a single action contains multiple claims — some antitrust and some not — Executive Risk may only apply the antitrust discount to the costs accrued in defending the antitrust claims.

The parties agree that the Gibson differential pricing claim, which was dismissed early in the litigation, triggered the Antitrust Endorsement, while the Gibson nondisclosure claim did not. (Snyder Decl. Ex. B at 1-2.) Because the parties have agreed that the Antitrust endorsement does not apply to the nondisclosure claim and because the plain language of the Antitrust endorsement makes clear that multiple claims brought in a single action will not be bundled for purposes of the antitrust discount, Executive Risk is required to reimburse Virginia Mason for all defense costs reasonably related to the defense of the nondisclosure claim. Executive Risk bears the burden of allocating defense costs between the nondisclosure claim and the differential pricing claim.[1]

**Conclusion**

This Court finds that the Gibson settlement constitutes a covered Loss under the Policy and is not barred from coverage by Exclusion III(A). The Court further finds that the Policy's Antitrust Endorsement does not limit Executive Risk's reimbursement obligation for Virginia Mason's costs in

---

[1] Executive Risk failed to respond to the issues addressed in Virginia Mason's Motion for Partial Summary Judgment Re: Duty to Pay Defense Expenses. (Dkt. No. 14.) The Court may consider the failure to file papers in opposition to a motion as an admission that the motion has merit. Local Civil Rule 7(b)(2).

ORDER - 9

1  defending the nondisclosure claim.  Executive Risk's motion for summary judgment is DENIED and

2  Virginia Mason's motions for summary judgment are GRANTED in full.

3      The Clerk is directed to send copies of this order to all counsel on record.

4      Dated:   November 14, 2007.

                                                     Marsha J. Pechman
                                                     U.S. District Judge

ORDER - 10